**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>INT. ASSOC. OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS, TRANSPORTATION DIV., LOCAL 1594, [1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-11777-mdc |

**CHAPTER 11, SUBCHAPTER V DEBTOR'S PLAN OF REORGANIZATION
DATED SEPTEMBER 14, 2023**

**Your rights may be affected by this Plan.
You should consider discussing this document with an attorney.**

---

[1] If applicable, the last four digits of the taxpayer identification number of the Debtor is 6853 and the Debtor's address is 6938 Market Street, Second Floor, Suite 3, Upper Darby, PA 19082.

**ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**

**1.1** **Nature of the Debtor's Business.**
The Debtor is the local union of SMART, the International Association of Sheet Metal, Air, Rail and Transportation Workers, operating out of Upper Darby, Pennsylvania and representing approximately 300 SMART-TD members working for the Southeastern Pennsylvania Transit Authority (SEPTA) in bus service, commuter rail, and trolley service.

**1.2** **History of Business Operations of the Debtor.**
The Debtor had gross revenues of $129,923.00 in 2021 and approximate gross revenues of $56,307.64 in 2022.

**1.3** **Filing of the Debtor's Chapter 11 Case.**
On June 16, 2023, the Debtor commenced this Chapter 11, Sub-Chapter V Bankruptcy Case. The Chapter 11 case is pending in the Bankruptcy Court for the Eastern District of Pennsylvania.

**1.4** **Legal Structure and Ownership.**
The Debtor is the local union of SMART, the International Association of Sheet Metal, Air, Rail and Transportation Workers. The General Chairman is Anthony Petty, and the President is Bruce Cheatham.

**1.5** **Debtor's Assets.**
The Debtor's sole asset is a TD Bank account which is used for collecting dues and insurance for its members. Rent and utilities are paid from this account.

**1.6** **Debtor's Liabilities.**
The Debtor has approximately $704,000.00 of general unsecured debts, approximately $8,600.00 of which is owed to Debtor's employees and approximately $695,000.00 is owed to a judgment creditor.

**1.7** **Current and Historical Financial Conditions.**
The Debtor's primary source of funding comes from membership dues as well as membership assessments. The funding sources vary depending on the timing of assessments throughout the year.

**1.8** **Events Leading to the Filing of the Bankruptcy Case.**
Due to the significant judgment entered against the Debtor by one of its former members and the imminence of execution thereon, the Debtor was unable to maintain its daily operations, which led to the Debtor filing this Chapter 11 case in order to afford it breathing room to be able to propose a plan allowing for monthly installment payments to the judgment creditor and the Debtor's employees.

**1.9** **Significant Events During the Bankruptcy Case.**
   a. On June 16, 2023, the Debtor filed its Petition, Schedules and Statements.
   b. On June 20, 2023, Richard E. Furtek was appointed as Subchapter V Trustee.
   c. On June 23, 2023, the Court entered an Interim Order Authorizing the Debtor to Pay Pre-Petition Salaries and Other Compensation.
   d. On June 28, 2023, the Debtor filed its Notice of Intention to Compensation Officers Pursuant to L.B.R. 4002-1.
   e. On June 30, 2023, the Court entered an Order Approving the Debtor's Application to Employ Gellert Scali Busenkell & Brown LLC as Debtor's counsel.
   f. On July 20, 2023, the Meeting of Creditors was held and concluded.
   g. On August 2, 2023, the Court entered an Order establishing September 1, 2023 as the Bar Date for filing Proofs of Claim.
   h. On August 3, 2023, the Court entered a Final Order Authorizing the Debtor to Pay Pre-Petition Salaries and Other Compensation.
   i. On August 24, 2023, the Debtor filed its Combined June and July 2023 Monthly Operating Report.

**1.10** **Projected Recovery of Avoidable Transfers**
NONE

**ARTICLE 2: THE PLAN**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purposes of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**2.1** **Unclassified Claims**
Certain types of Claims are automatically entitled to specific treatment under the

Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Administrative Tax Claim | $0.00 | Any allowed claim of this type will be paid though the plan as an |

|  |  |  |
|---|---|---|
|  |  | ADMINISTRATIVE EXPENSE |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Professional fees, as approved by the Bankruptcy Court | Estimated at $25,000 | After Bankruptcy Court approval, Payment through the Plan as follows:<br><br>Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Subchapter V Trustee | INCLUDED IN PROFESSIONAL FEE ESTIMATES, ABOVE | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>Any allowed claim of this type will be paid though the plan as a ADMINISTRATIVE EXPENSE |
| TOTAL | $25,000 |  |

**B. Priority Tax Claims**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| NONE |  |  |  |

**2.2 Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class No. | Description | Insider (Yes/No) | Impairment | Treatment |
|---|---|---|---|---|
| NONE | | | | |

### B. Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Employee Wage Claims of the following Claimants:<br>Anthony Petty $1,818.90<br>Bruce Cheatham $2,242.40<br>Cynthia P. Kelly $1,303.08<br>Dwayne Benson $912.17<br>Jeneen Hand $814.43<br>Micah Cross $1,246.07 | Impaired | Upon completion of payment to Administrative Claimants, this class of Claims will be paid in pro rata monthly installments until paid in full |

|  | Princess Flemings $274.18 |  |  |
|---|---|---|---|

### C. Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2, which contains general unsecured Claims against the Debtor:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | General Unsecured Claims totaling | Impaired | Upon completion of payment to Priority Claimant, a total of $14,000 will be paid to general unsecured creditors, to be distributed pro-rata on a monthly basis. The Debtor estimates this will result in a distribution of approximately 2%. |

### D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| NONE |  |  |  |

## 2.3 Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim

under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| NONE* | | |

**\***Debtor reserves its right to challenge computation of Claim #1 of Aaron Lett.

### 2.4 Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

**The Debtor intends to assume all contracts listed on Amended Schedule G filed on June 23, 2023 at D.I. 31, attached hereto as Exhibit A.**

### 2.5 Means for Implementation of the Plan, Consequences for Failure to Make Plan Payments

#### 2.5.1 Order of Distribution:

Throughout the duration of the Plan, Chapter 11 Plan payments shall be disbursed in a "waterfall" approach, with Administrative Expenses being paid first, priority unsecured creditors being paid second and then general unsecured creditors being paid third. Claims in the same category shall be paid pro-rata.

#### 2.5.2 Periodic Payments

The Debtor does not intend to make periodic payments outside of the waterfall approach.

**Upon Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.**

### 2.6 Events of Default, Material Default, and Consequences Thereof

In the event that the Debtor fails to: (a) Make all Chapter 11 Plan Payments within fifteen (15) days of their due date; or (b) Maintain adequate insurance coverages, then the Debtor shall be in Default of its Chapter 11 Plan Obligations.

Upon an event of Default, the Sub-V Trustee, the U.S. Trustee, or any creditor may file a

certification of default with respect to the Plan with the Court. This certification must be served upon the Debtor, Debtor's Counsel, the United States Trustee's Office, the Sub-V Trustee, and all other creditors.

The Debtor shall have an opportunity to respond and either cure the default prior to the date of a hearing on such certification of default, or have an opportunity to cure if so permitted by the Court at the hearing on the certification of default.

In the event that the default is not cured by the Debtor prior to the hearing or following the hearing in accordance with the Court's order, then the Debtor shall be in Material Default of the Chapter 11 Plan.

Upon the occurrence of a Material Default of the Chapter 11 Plan, then the Sub-V Trustee or any creditor may certify to the Court that the Debtor has failed to meet these deadlines, on notice to the Debtor, Debtor's Counsel, the United States Trustee's Office, the Sub-V Trustee, and all other creditors. If the Court finds that the Debtor is in Material Default and that no just cause exists for extending the Debtor's opportunity to cure the Material Default, then the Court shall order appropriate relief.

If applicable, the Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

## 2.7 Payments

If the plan is confirmed under 11 U.S.C. §1191(a), then the Debtor shall act as the Disbursing Agent. If the plan is confirmed under 11 U.S.C. §1191(b), then the Sub-Chapter V Trustee shall act as the Disbursing Agent.

## 2.8 Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows. The following amounts are approximations based on what each officer/position was compensated for during the 2022 fiscal year. Officers are not compensated with a set salary but are, rather, compensated based on hourly work performed for the Union.

| Name | Position | Compensation |
|---|---|---|
| Bruce Cheatham | President | $9,549.83 |
| Anthony Petty | General Chairman | $7,268.58 |

| Micah Cross | Vice Chairman | $4,633.82 |
| --- | --- | --- |
| Jeneen Hand | Vice Local Chairman Secretary/Treasurer | $28,677.67 |
| Dwayne Benson | Vice Local Chairman | $4,633.82 |
| Princess Flemmings | Trustee | $3,918.83 |
| Michelle Hayward | LCA Secretary | $3,097.41 |
| Antione Ray | Trustee | $3,918.00 |
| Clavon Need | Alternate | $2,064.94 |
| Wayne Morris | Vice President | $5,000.00 |

**2.9 Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

The following are the anticipated tax consequences of the Plan: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on Creditors of any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation.

**2.10        Projections in Support of Debtor's Ability to Make Payments Under the Plan**

The Debtor will supplement this plan with financial projections within seven (7) days of filing. The financial projections will be Exhibit A to this Plan.

**ARTICLE 3: FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1 Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**3.2 Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor will provide projected financial information. Those projections will be listed in **EXHIBIT A** (referenced in § 2.10, above).

The final Plan payment is expected to be paid on **OR BEFORE** 60 months after confirmation of the original Chapter 11 Plan.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4: LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. Unsecured creditors would receive less than $14,000 in a liquidation, and as such this test is met.

## ARTICLE 5: DISCHARGE

**5.1. Discharge.**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

i. on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
ii. if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6 GENERAL PROVISIONS

**6.1 Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general

partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2 Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4 Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5 Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6 Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan. If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any

time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7 Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7: FREQUENTLY ASKED QUESTIONS

**What Is Int. Assoc. of Sheet Metal, Air, Rail & Transportation Workers, Transportation Div., Local 1594 Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the

Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2 identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address:

Gellert Scali Busenkell & Brown LLC
Attn: Holly S. Miller./ Int. Assoc. of Sheet Metal, Air, Rail & Transportation Workers,
Transportation Div., Local 1594
1201 N. Orange Street, Suite 300
Wilmington, DE 19801

**How Do I Determine When and How Much I Will Be Paid?** In Section 2, the Debtor has provided estimates of amounts to be paid to each creditor class.

## ARTICLE 9: DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter

11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

      **9.5**    **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

      **9.6.**    **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

      **9.7.**    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

      **9.8.**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

      **9.9.**    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

      **9.10.**    **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

      **9.11.**    **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

      **9.12.**    **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

      **9.13.**    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

      **9.14.**    **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Choates G. Contracting, LLC is the Debtor-in-Possession.

**9.15 Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.  Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.  Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.  Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.  Confirmation Hearing**: The hearing to be held on _____, 2023 to consider confirmation of the Plan.

**9.20.  Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.  Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.  Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.  Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.  Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.  Effective Date**: The effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.  Equity Interest**: An ownership interest in the Debtor.

**9.27.  Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.** **IRC**: The Internal Revenue Code

**9.30.** **Petition Date**: June 16, 2023, the date the chapter 11 petition for relief was filed.

**9.31.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.** **Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.** **Trustee**: Richard E. Furtek, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37** **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Holly S. Miller*
Holly S. Miller (PA 203979)
8 Penn Center
1628 John F. Kennedy Blvd., Suite 1901
Philadelphia, PA 19103
Telephone: (215) 238-0012
Facsimile: (215) 238-0016
hsmiller@gsbblaw.com

*Counsel to the Debtor*